**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE NATIONAL FEDERATION | * | |
| OF THE BLIND, | * | |
| | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. GJH-18-2965 |
| | * | |
| U.S. ABILITYONE, | * | |
| COMMISSION, et al., | * | |
| | * | |
| Defendants | * | |
| | * | |

\*    \*    \*    \*    \*\*\*    \*    \*    \*    \*

**DEFENDANTS' REPLY TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

In accordance with Local Rule 105, the defendants, the United States AbilityOne Commission, Thomas D. Robinson, in his official capacity as Chair of the AbilityOne Commission, and Tina Ballard, in her official capacity as Executive Director of the AbilityOne Commission (hereinafter collectively, "the Commission"), by their attorneys, Robert K. Hur, United States Attorney for the District of Maryland, and undersigned counsel, submit this Reply to the plaintiff's, the National Federation of the Blind ("NFB"), Opposition to the defendants' motion to dismiss, or alternatively, for summary judgment.

## I.   INTRODUCTION

On March 15, 2019, the NFB filed its Opposition to the

Commission's motion seeking dismissal of or summary judgment on NFB's complaint for declaratory judgment respecting the designation of the American Federation of the Blind ("AFB") as a Central Non-profit Agency ("CNA") and its reply to the Commission's Opposition to NFB's motion for a preliminary injunction seeking to enjoin the implementation of the Cooperative Agreement between the Commission and the American Federation of the Blind ("AFB").   ECF No. 30.   As the Court will well recall, this case centers upon NFB's multi-pronged allegation that: (1) the Commission violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*, by designating the AFB as a CNA without notice to the public and allowing for a period of comment in accordance with 5 U.S.C. § 553(b) – (c); (2) the absence of any prior publicized notice of the CNA designation and the failure to solicit other bids or applications for such contravened the Uniform Administrative Requirements, Cost Principles, and Audit Requirement for Federal Awards ("UAR"), 2 C.F.R. §§ 200.203 and 200.205(b), the Federal Procurement Act, 41 U.S.C. § 1708, and the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 5.201, and thus the designation was not in accord with the law; and (3) the CNA designation is arbitrary and capricious because no legitimate rationale underlies the selection of AFB or explains why the Commission did such without soliciting and considering other applicants.   ECF No. 1

in *National Federation of the Blind v. U.S. AbilityOne Commission, et al.*, Civ. No. GJH-18-2965 at ¶¶ 71-97.

NFB, in its Opposition to the motion to dismiss or for summary judgment, tries to stitch together, by way of innuendo, unfounded attribution of illicit motives, the use of charged language, and a distortion of the Administrative Record ("A.R."), a tale of a designation process marked by Agency conduct that was "covert" by design so as to install as a CNA an organization ill-suited for the task.  ECF No. 30 at 6-13.  In continuing to press its case that the Commission acted arbitrarily and capriciously and in defiance of the governing law, NFB makes four principal arguments. First, regarding the reviewability of the CNA designation under 5 U.S.C. § 701(a)(2) of the APA, the "committed to agency discretion exception" to the notice and comment requirements of the APA upon which the Commission's motion to dismiss is predicated, NFB argues that there are indeed judicially manageable standards by which to judge the Commission's CNA designation.  Effectively conceding that the CNA designation process is a discretionary act, ECF No. 30 at 25, ¶ 2, the NFB maintains that the implementing regulations for the Javits Wagner O'Day Act ("JWOD") at 41 C.F.R. § 51-1.3, and the factors identified by the Commission's General Counsel in the CNA due diligence memorandum at A.R. 000077, "limit" the Commission's discretion, ECF No. 30 at 25, and so provide standards

by which to determine whether the Commission acted arbitrarily, capriciously, and counter to the law in making the CNA designation. So too, the NFB further insists, do the UAR's and the FAR's contracting and federal acquisition requirements and the 2016 Consolidated Appropriations Act and the 2017 National Defense Authorization Act ("NDAA") all serve as frameworks to evaluate the CNA designation.  ECF No. 30 at 26.

Respecting summary judgment, the NFB contends that the Administrative Record fails to establish an absence of a genuine dispute of material fact meriting this form of relief.  *Id.* at 28. Specifically, the NFB asserts that the record shows that the APA's notice and comment requirements were triggered because the Commission engaged in rulemaking when the Commission changed the process by which it designated CNAs from its decades-old use of either "legislation"  or "regulation" to an informal process consisting of "courting AFB to apply" for the designation; using a "targeted RFP" (request for procurement) selection process; conducting a brief due diligence review and adopting additional CNA standards, which it then waived along with the standards that CNAs must meet under 41 C.F.R. § 51-1.3. ECF No. 30 at 28.

The NFB further argues that because the Commission used a cooperative agreement to effectuate the AFB designation as a CNA, the Commission was required to follow all of the UAR's provisions,

4

including its notice and competition requirements, because all portions of the UAR apply to cooperative agreements under 2 C.F.R. § 200.101(b) without regard to whether it is a competitive award or commercial agreement. ECF No. 30 at 33. It contends that the FAR applies to acquisitions because in designating the AFB as a new CNA, the Commission acquired a service – the definition of an "acquisition" under 48 C.F.R. § 2.101 and that as a "commercial transaction," the designation constituted a procurement subject to the FAR. ECF No. 30 at 33-34.

Lastly, the NFB argues that summary judgment is inappropriate because the Administrative Record generates material disputes of fact as to whether the AFB would have been designated as a CNA had the Commission followed the UAR and FAR guidelines and its own CNA qualification standards and that the deviation therefrom establishes that the Commission's decision to designate AFB as a CNA was arbitrary and capricious. *Id*. at 35-38. As explained fully below, the NFB is wrong as to all of the above adumbrated arguments and summary judgment is proper in this case as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.  <u>REPLY ARGUMENT</u>

Before turning to the merits of the contentions asserted by the NFB which seek to turn judicial review of agency action on its head, it bears repeating that the role of the Court in reviewing

agency action is not boundless.  Of course, agency action must be set aside and held unlawful when such action is, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  *See* 5 U.S.C. §§ 706(2)(A)-(C) (setting forth what action is violative of the APA).  Review under the APA is, nonetheless, highly deferential and a presumption of validity and regularity attaches to agency action.  *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).  None of the arguments mustered by the NFB weakens or eradicates this presumption.

### A.  Judicial Review of the Agency's Action Is Barred Under 5 U.S.C. § 701(a)(2) "Committed to Agency Discretion Exception"

NFB maintains that judicial review of the Commission's CNA designation decision is not proscribed by the committed-to-agency-discretion exception set forth under 5 U.S.C. § 701(a)(2) because the Court may look to a number of sources as a basis for devising judicially manageable standards by which to judge the CNA designation.  ECF No. 30 at 25-27.  Those sources include, the NFB contends, the UAR and the FAR, as well as the prescriptives of the 2016 Consolidated Appropriations Act and the 2017 National Defense Authorization Act.  *Id*.  To be sure, judicially manageable standards may be found in formal and informal regulations and policy statements, *Padula v. Webster*, 822 F.2d 97, 100 (D.D.C.

1989), but such sources do not support reviewability here.   The regulations simply define a CNA and its responsibilities in language echoing the JWOD Act.   41 C.F.R. §§ 51-1.3 & 51.3.2(a)(n) (2019).   Like the JWOD Act, the regulations are devoid of references to the standard to be applied in carrying out the CNA designation.   *Id.*

Although the NFB points to the UAR and the FAR as providing judicially manageable standards by which to evaluate the CNA designation, as explained below in Section C, those regulations do not speak to the process by which to designate a CNA.   Nor does the regulation set forth at 41 C.F.R. § 51-1.3 provide a manageable standard as the subsection sets forth only the definition of a CNA and not the process by which the designation should occur.   Neither do the 2016 Consolidated Appropriations Act nor the 2017 NDAA provide standards under which to assess the process for designating a CNA.   The former relates to what should be included in written agreements with CNAs.   The latter merely makes a recommendation for exploring opportunities for competition amongst CNAs and is not binding and does not address the designation process.   In this way this case is unlike *Healthy Teen Network v. Azar*, 322 F.Supp.3d 647 (D.Md. 2018) where the Consolidated Appropriations Act there pertinent imposed restrictions directly related to the agency's decision respecting funding of teenage pregnancy prevention

programs.

**B.   The CNA Designation Was Not Rulemaking Triggering the Notice and Comment Requirements of 5 U.S.C. § 553(b)-(c)**

Neither is there merit to the NFB's contention that the Commission "altered" the process by which it selects CNAs with the AFB designation and thereby engaged in rulemaking triggering the APA's notice and comment requirements.   ECF No. 30 at 29-30.   The NFB's argument in this regard is predicated on the incorrect proposition that the Commission, in the past, designated the National Institute for the Blind ("NIB") and the National Institute for the Severely Handicapped ("NISH," now renamed "SourceAmerica") by either legislation or regulation and that the AFB designation did not occur by this method but rather by an "informal" and new adjudicatory process that constituted a substantive policy change. *Id*.   The "new" adjudicatory process, NFB continues, included "courting" AFB to apply; utilizing an individually targeted RFP selection process and abandoning it after the Technical Evaluation Team indicated its lack of confidence in AFB; performing a "four-day due diligence review"; waiving CNA standards; and allowing the CNA designation to occur by vote.   *Id*. at 30-31.

The category of rules to which the APA's notice and comment requirements apply, that is, legislative or "substantive" rules are those that supplement a statute, adopt a new position

8

inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy. *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C.Cir. 2014). The CNA designation does not fit within these qualifiers. What the NFB consistently ignores is that the JWOD Act sets forth no process for the designation of a CNA; the Act merely obligates the Commission to effect a designation. 41 U.S.C. § 8503(c). The JWOD Act's implementing regulations likewise set forth no process for CNA designations. The regulations simply define the term "CNA" and the CNA responsibilities in language echoing the statute. 41 C.F.R. §§ 51-1.3 & 51.3.2(a)-(n) (2019). Like the statute, the regulations are silent as to the process by which the CNA designation may be made. *Id*. The designation of AFB as a CNA was not therefore a "new" adjudicatory process supplanting or changing an existing statutory, regulatory, or policy requirement.

Though the NFB cites certain pages in the Administrative Record, that is, A.R.000005 and A.R.000080-81, as support for its contention that the Commission engaged in rulemaking by changing its policy to allow designation of a new CNA by vote, ECF No. 30 at 31, a fair reading of those cited pages shows that the designation decision was to occur by electronic vote consonant with the Commission voting protocols, A.R.000005, and that in early June, 2018, prior to the vote, the Commission redefined the term

"Special Vote Letter" to include the terms "Agency Operations Decision Document" and "CNA Designation Decision Document." A.R.000080-81. Such action was nothing more than a means of describing the Commission's definition of the term "Special Vote Letter." Such action is not tantamount to rulemaking as that term is defined in 5 U.S.C. §§ 551(4)-(5).

The NFB's assertion that the earlier CNA designations of NIB and NISH were made by legislation or regulation and in accordance with the notice and comment procedures misconceives the history of those actions. The 1973 Federal Register notices referenced by the NFB in its Opposition, ECF No. 30 at 4, and the Amended Complaint, ECF No. 2 at ¶ 35, related to the then new regulations pending promulgation by the Commission to reflect the changes impelled by the 1971 amendment of the then Wagner O'Day Act. H.R. No. 92-228, 92d Cong., 1st Sess. (May 25, 1971). The amendment was a response to the efforts of a coalition of national non-profit entities serving people with severe disabilities; those organizations included the: (1) Goodwill Industries of America; (2) International Association of Rehabilitation Facilities; (3) National Association for Retarded Children; (4) National Easter Seal Society for Crippled Children and Adults; (5) United Cerebral Palsy Association; and (6) Jewish Occupational Council. 116 Cong.Rec.S 1517 (daily ed. Feb. 10, 1970); 116 Cong.Rec.E 1100-

10

1101 (daily ed. Feb. 19, 1970); *see also* History of SourceAmerica, available at https://www.sourceamerica.org/history (last visited on April 11, 2019).

The amendment extended to severely handicapped persons the authority to sell certain products to the federal government and enlarged the scope of the Act to include the provision of services and not just products and commodities. 38 Fed.Reg. 6076 (Mar. 6, 1973). The Federal Register notice also identified that NIB was the CNA for the blind community, a designation it had held since 1938 shortly after the enactment of then then Wagner O'Day Act (now referred to as the JWOD Act). *Id.* On June 21, 1973, the Commission's regulations were amended to simply identify the above six organizations as serving as the CNAs for the severely handicapped community. 38 Fed.Reg. 16316 (June 21, 1973). After the six organizations named above combined to form NISH (later renamed, "SourceAmerica"), the Commission issued a Federal Register notice recognizing the newly formed organization and its retention as a CNA. 39 Fed.Reg. 35364 (Oct. 1, 1974). Another Federal Register notice in 1976 gave notice that the Commission transferred the CNA functions for "non-blind workshops" to NISH and had withdrawn the CNA designation for the six separately named organizations that ultimately combined to form NISH. 41 Fed.Reg. 26905 (June 30, 1976); 41 Fed.Reg. 21359 (May 25, 1976). The

11

history thus reflects that legislation, regulation, and public notice did not serve as the process by which the CNA selections were made; the legislation, regulations and Federal Register notices merely provided to the public the identities of the CNAs. The designation of AFB as a CNA was not an alteration of a previously established process for CNA selection and so did not constitute rulemaking.   There was no statutory "process" for CNA designations set forth in either the JWOD Act or the implementing regulations to alter.   The notice and comment requirements of the APA therefore did not apply to the AFB designation.

There is no basis for the NFB's dismissal as "disingenuous" and contrary to the AFB Cooperative Agreement the fact that the AFB designation as a CNA was consonant with the Commission's statutory mandate under 41 U.S.C. § 8503(e) to "make a continuing study and evaluation of its activities under [the JWOD Act] to ensure effective and efficient administration of [the Act]."   As explained in the Commission's motion to dismiss or for summary judgment, ECF No. 24 at 32, the Commission is vested with the statutory authority either on its own "or in cooperation with other public or nonprofit private agencies" to study "problems related to the employment of the blind and other severely disabled individuals" and "the development and adaptation of production methods that would enable a greater utilization of the blind and

other severely disabled individuals. *Id*. at §§ 8503(e)(1)-(2).
The Court need only read Section A of the AFB Cooperative
Agreement, ECF No. 17-2 at 7-10, attached to the NFB's motion for
a preliminary injunction, to ascertain that Phase I of the three
phases of the Cooperative Agreement pertains to researching
innovative employment opportunities, careers and lines of business
for the blind community and identify a model for continuous
identification of such opportunities. The fact that Phases II and
III of the Cooperative Agreement pertain to functioning as a CNA
is a circumstance that does nothing to lessen the applicability of
41 U.S.C. §§ 8503(e)(1)-(2).

Importantly, on the issue of the applicability of the notice
and comment requirements, the NFB does not dispute that the JWOD
Act, under § 8503(a)(2), expressly mandates that additions to or
removals of products and services from the JWOD Act Procurement
List requires adherence to the APA's notice and comment but no
such requirement is made as to § 8503(c), the CNA designation
provision. The inclusion of the APA notice and comment
requirements in § 8503(a)(2) but not in § 8503(c) may be
interpreted as a deliberate choice and one that was made in
recognition that the CNA designation is not "rulemaking" activity.
When Congress includes language in one section of a statute but
omits it in another section of the same Act, it is generally

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Russello v. United States*, 464 U.S. 16, 23 (1983). Given that the notice and comment requirement of § 553(b) was not triggered by rulemaking activity, no violation of the APA occurred as a consequence of the designation of AFB as a CNA.

Finally, although the NFB declaims that the AFB cooperative agreement's status as a contract does not exempt it from the APA's notice and comment requirements under 5 U.S.C. § 553(a)(2) because only the alleged "alteration" of the process for designating CNAs is relevant to the notice and comment applicability inquiry, such an interpretation is counter to the express language of § 553(a)(2). As that statutory provision plainly states, the APA exempts from the rulemaking requirement of notice and comment "any matter relating to agency management or personnel or to public property, loans, grants, benefits or contracts." The CNA designation and corresponding cooperative agreement effectuating the designation clearly relate to a contract. There is no question that the AFB cooperative agreement falls within this exemption. *See City of Philadelphia v. Sessions*, 280 F.Supp.3d 579, 613 (E.D.Pa. 2017) (notice and comment requirement inapplicable to matter relating to imposition of grant conditions under 5 U.S.C. § 553(a)(2)); *see also Thomas v. Network Solutions, Inc.*, 2

14

F.Supp.2d 22, 37 (D.D.C. 1998), *judgment vacated on other grounds*, *Thomas Network Solutions, Inc.*, 1998 WL 1738181 (D.D.C. August 28, 1998) (cooperative agreement between National Science Foundation and private company to register domain names and assign Internet Protocol addresses excepted from APA's notice and comment requirement because cooperative agreement was a contract under 5 U.S.C. § 553(a)(2) of APA).

Moreover, the statutory exemption in § 553(a)(2) applies because the challenged designation and contract constituted a "matter of agency management." The distinction that the NFB draws between the Commission's authority under the JWOD Act and the authority vested in the Federal Home Loan Bank in *Saratoga Sav. & Loan Ass'n v. Federal Home Loan Bank of San Francisco*, 724 F.Supp. 683 (N.D.Calif. 1989), ECF No. 30 at 32, is a distinction without legal significance. It matters not that under the JWOD Act the Commission must designate CNAs, 41 U.S.C. § 8503(c), and the Federal Home Loan Bank in *Saratoga* "could" appoint others to perform certain of its functions. 724 F.Supp. at 684. The point is that both entities possessed the statutory authority to do such and actions in pursuit of that authority, whether mandatory or permissive, are a matter of agency management under 5 U.S.C. § 553(a)(2) of the APA.

**C.** **The UAR and FAR Were Not Violated By the CNA Designation**

Also baseless is the NFB's contention that the Commission violated the UAR when it did not satisfy its notice and competition requirements in 2 C.F.R. §§ 200.203-205 before entering into the cooperative agreement with AFB because the UAR governs all cooperative agreements where, as here, none of the specified exemptions to the UAR's provisions apply.  ECF No. 30 at 33.  NFB misconceives the point of the Commission's position respecting the UAR.  To clarify, there is no dispute that cooperative agreements are subject to the UAR but NFB's arguments that competitive procedures of the UAR were _required_ are without merit.  The UAR contemplates that agencies may award cooperative agreements on a noncompetitive basis and are not required to use the notices of funding opportunities, review of merit proposals, review of risk posed by applicants and specific conditions provisions of the UAR set forth in 2 C.F.R. §§ 200.203, 200.204, 200.205 and 200.207, respectively.  Section 200.200(b) of the Grants and Agreements regulation in Title 2 of the Code of Federal Regulations provides that the above-cited subsections are "required only for competitive Federal awards, _but may_ also be used by the Federal awarding agency for non-competitive awards where appropriate or where _required_ by Federal statute." 2 C.F.R. § 200.200(b) (emphasis added).  By this language, the regulation clearly contemplates that some awards will be made without competition and allows for

agency discretion where no statutory requirement to compete exists. Neither the JWOD Act nor the 2017 NDAA mandating use of written agreements impose a statutory requirement to use any of the UAR provisions pertaining to public notice of awards or specific processes for evaluating proposals. Therefore, whether to use competitive or non-competitive processes is within the purview of the Federal awarding agency to determine. The UAR requires agencies to determine the appropriate instrument to use for the Federal award as between contracts, grants and cooperative agreements. 2 C.F.R. § 200.201.

NFB's argument that the FAR applies to the AFB designation as effectuated by way of the cooperative agreement is a red herring. The UAR, not the FAR, applies to cooperative agreements. *See* 2 C.F.R. § 200.38(b)-(d) *and* § 200.40(a)(2); *and* FAR 2.101, Contracts (which excludes grants and cooperative agreements covered by 31 U.S.C. §§ 6301-6308.)

The cooperative agreement served simply to designate an entity which would "facilitate the distribution . . . of orders of the Federal Government for products and services on the procurement list," 41 U.S.C. § 8503(c), for which that entity – central nonprofit agency – might "charge fees to nonprofit agencies for facilitating their participation in the AbilityOne Program." 41 C.F.R. § 51-3.5. The Commission itself was not acquiring

supplies or services with appropriated funds, but rather was making the award "to carry out a public purpose of support . . . authorized by law . . . instead of acquiring . . . property or services for the direct benefit or use of the United States Government; and substantial involvement is expected between the executive agency and the . . . other recipient when carrying out the activity contemplated in the agreement" by effectuating through the cooperative agreement the designation of AFB as a CNA.  31 U.S.C. § 6305.  The CNA designation at issue here is tantamount to conferring a status much like that in *Grigsby Brandford & Co., Inc. v. United States*, 869 F.Supp. 984, 997 (D.D.C. 1994); it was not a procurement or acquisition and so the federal procurement laws and regulations did not apply.  The Commission thus did not act contrary to law in violation of the UAR and the FAR in making the designation in the manner that it did.

### D.  <u>The CNA Designation Was Not Arbitrary and Capricious</u>

Finally, there is no merit to the NFB's claim that summary judgment is precluded because the Administrative Record reflects that there are genuine disputes of material fact as to whether the Commission acted arbitrarily and capriciously and abused its discretion in making the CNA designation.  ECF No. 30 at 35. Specifically, the NFB maintains that there is a genuine dispute as to whether the AFB would have been a qualified CNA had the

procedures set forth in the UAR for evaluating the risk posed by AFB in terms of its financial stability, quality of management systems, and history of audit reports been applied. *Id.* at 36. The NFB further declaims had the "competition principles" of the FAR been applied, NFB would likely have been viewed as uniquely situated to serve as a CNA. *Id*. at 36-37. Furthermore, the NFB continues, had the Commission heeded its own standards used to justify AFB's designation, AFB would not have qualified as a proper CNA. The NFB contends that the Commission did only a cursory due diligence review using criteria that the record fails to show that AFB met and the Commission ignored the Technical Evaluation Team's concerns about AFB's technical and financial proposals. *Id*.

In making these arguments, the NFB, in effect, is asking this Court to substitute its judgment for that of the Commission's as to the CNA designation. The scope of the Court's review under the arbitrary and capricious standard precludes such Monday morning quarterbacking. The Court's review is narrow and must only consider whether the decision at issue is based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Instructive in this regard is *Neustar, Inc. v. Federal Communications Commission*, 857 F.3d 886 (2017), a case cited by

the NFB in its Opposition. In *Neustar*, the FCC, after soliciting bids, selected a company other than Neustar, a telecommunications provider, to serve as a local number portability administrator ("LNPA"). *Id*. at 889. The company selected was named Telcordia. *Id*. After objecting, to no avail, to the LNPA selection process on procedural grounds and challenging Telcordia's fitness to serves as a LNPA on, *inter alia*, neutrality grounds, Neustar petitioned the Court District of Columbia Court of Appeals asserting these same arguments. *Id.* at 891-900. The Court of Appeals, in reviewing the issue raised as to whether the FCC's decision that Telcordia met the FCC's criteria to serve as a neutral LNPA, observed that Neustar raised concerns that might well have justified a decision by the FCC against the selection of Telcordia as a LNPA. *Id*. at 900. The *Neustar* court went on to hold that it was required to be guided by the standard of whether the decision was arbitrary and capricious and not to substitute its judgment for that of the FCC's. *Id*. Adhering to that standard, the Court of Appeals concluded that it could not say that the FCC's decision respecting Telcordia was "sufficiently incorrect, misguided, or without basis to render it arbitrary and capricious." *Id*. The Court should so hold here.

As explained more fully in the Commission's motion to dismiss or for summary judgment, ECF No. 24 at 10-19, 41-43, which facts

and argument are incorporated herein, AFB was designated as a CNA because of its longstanding history of innovation and because AFB's strategic direction and the Commission's mission were deemed as well-aligned. *Id*. The administrative record sets forth that the Commission explained its course of inquiry, its analysis of the problems of employment growth stagnation, and its reasoning for choosing AFB sufficiently such that this Court may discern a rational connection between the decision-making process and the ultimate decision. Contrary to the NFB's assertions, the Commission undertook a due diligence review of AFB's capabilities, which review was noted as "preliminary," A.R.000070, and which was ongoing as the Cooperative Agreement makes clear. ECF No. 17-2 at 7. The due diligence criteria used was clearly identified as having its roots in business principles and the law. A.R.000071. Furthermore, the Commission did not ignore the Technical Evaluation Team's observations; those concerns were put before the Commission members voting on the CNA designation. A.R.000182-96.

In sum, deference is due the Commission's decision because it examined the relevant factors and provided an explanation of its decision that shows a rational connection between the facts found and the decision that was made. The CNA designation is thus the antithesis of arbitrary and capricious action or action constituting an abuse of discretion in violation of the APA.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court grant the Defendants' motion to dismiss, or alternatively, for summary judgment as to the plaintiff's complaint and motion for a preliminary injunction.

Respectfully submitted,

ROBERT K. HUR
United States Attorney

By: /s/
TARRA DeSHIELDS
Assistant United States Attorney
General Bar No. 07749
Office of the United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
Counsel for Defendant

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of April, 2019, a copy of the foregoing Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, Or Alternatively, For Summary Judgment on Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief was electronically filed and was so served upon Eve L. Hill, Emily L. Levenson, and Anthony May, BROWN GOLDSTEIN

& LEVY, LLP, 120 East Baltimore Street, Suite 1700, Baltimore, Maryland 21202.

/s/
TARRA DeSHIELDS
Assistant United States Attorney